**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **EARL D. JOHNSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. GJH-20-559** |
| **SERGEANT BRIAN SIMMONS,** | * | |
| **LIEUTENANT ERIC KRETZER,** | | |
| **WARDEN RICHARD DOVEY, and** | * | |
| **LIEUTENANT DWAYNE DRAPER,** | | |
| | * | |
| **Defendants.[1]** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Earl D. Johnson brings this civil action against Defendants Warden Richard Dovey, Lt. Dwayne Draper, Lt. Eric Kretzer, and Sgt. Brian Simmons related to his placement in administrative segregation housing while incarcerated at the Maryland Correctional Training Center. ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 18. Also pending are Plaintiff's Motion to Amend the Complaint, ECF No. 21, and other self-styled requests to supplement or amend the Complaint, ECF Nos. 16, 26, 27, which will be denied. For the following reasons, Defendants' Motion is granted.

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' names and titles as they appear in the Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 18 at 1; ECF No. 18-4; ECF No 18-8.

## I.  BACKGROUND

Plaintiff, who is self-represented, is currently incarcerated at the Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland.[2] This lawsuit, which was filed on February 28, 2020, raises claims based on Plaintiff's incarceration at the Maryland Correctional Training Center ("MCTC"). ECF No. 1. Plaintiff filed supplemental information at the Court's direction. ECF No. 5. He subsequently filed numerous submissions to amend and supplement the Complaint. ECF Nos. 9, 12, 13, 14, 16, 21, 26, 27.

Broadly, Plaintiff alleges that he was improperly kept in administrative segregation housing, rather than being returned to the general population or transferred to another facility, as retaliation for filing a lawsuit against an MCTC officer and due to negligence on the part of MCTC's staff. Plaintiff further alleges that he filed administrative remedy procedure complaints ("ARPs"), but Defendants did not properly investigate or follow up on them. Plaintiff requests monetary relief and transfer to Jessup Correctional Institution. ECF No. 1 at 3; ECF No. 5 at 3–4; ECF No. 9.

Defendants, in their Motion to Dismiss or, in the Alternative, for Summary Judgment—supported by a number of exhibits, including affidavits by the individual defendants—argue that Plaintiff was kept in administrative segregation housing due to legitimate security reasons, that he was not immediately transferred due to COVID-19 restrictions, that his ARPs were rejected due to non-compliance with the relevant rules for filing them, and that he did not exhaust his administrative remedies prior to filing this Complaint. ECF No. 18. The following description of the events in question includes allegations by both parties.

---

[2]  On August 24, 2020, Plaintiff informed the Clerk that he had been transferred from the Maryland Correctional Training Center ("MCTC") to RCI. ECF No. 25.

### A.  Plaintiff's Placement on Administrative Segregation

According to Defendant, on December 16, 2019, Plaintiff asked an officer in Housing Unit 5 to put him in administrative segregation housing because he feared for his life after being robbed by other inmates.[3] ECF No. 18-4 ¶ 3; *see also* ECF No. 18-5 at 3–5. Plaintiff was placed on administrative segregation that same day. ECF No. 18-5 at 4. The Administrative Segregation Team—composed of "Administration, Case Managers, Housing Unit Lieutenants, Intel Officers and Investigative Officers"—meets with inmates within 120 hours of their placement on administrative segregation and then every 30 days thereafter. ECF No. 18-4 ¶¶ 4–5. On December 17, 2019, members of the Administrative Segregation Team, including Defendants Dovey and Simmons, met to discuss Plaintiff's placement on administrative segregation and determined that "the investigative team and case management" would meet with Plaintiff the next day. ECF No. 18-6 ¶ 2(a). The following day, December 18, 2019, three members of the Administrative Segregation Team, as well as Defendant Simmons, met with Plaintiff. *Id.* Based on his allegations of being robbed at knifepoint by other inmates as well as his stated fear for his safety, the team recommended assigning him to administrative segregation and placing him on a transfer list for a medium security facility. *Id.*

On January 15, 2020, the same three team members and Defendant Simmons met for Plaintiff's monthly administrative team review. *Id.* ¶ 2(b). The team decided he would remain on administrative segregation and remain on the medium facility transfer list. *Id.*

On February 11, 2020, the team met again about Plaintiff's situation, and then met with Plaintiff the following day, February 12, 2020, to provide him an update. ECF No. 18-4 ¶ 5.

---

[3] Plaintiff maintains that he should have been transferred two years earlier but does not provide other facts in support. ECF No. 5 at 2. Notably, he does not allege or present facts to suggest Defendants were aware of a specific harm to him at that time.

According to Defendant Simmons, during that meeting with Plaintiff, "someone (not sure who) mentioned Plaintiff's lawsuits against officers at MCTC." *Id.* Defendant Simmons further states in his affidavit that "[w]hen an inmate places a civil suit on an officer, it is normal to talk to the officer and inmate to ensure, and place in writing, that neither party fears for their safety." *Id.* He goes on to say that, when asked about the civil lawsuits against staff, Plaintiff "became belligerent and very angry" and "was making negative comments toward staff." *Id.* ¶ 6. As a result, Defendant Simmons continues, the team "felt it was in the best interest for staff and [Plaintiff's] safety to be transferred to another medium security facility and not be placed back into general population. [Plaintiff's] threatening language towards staff prevented him from going back into general population." *Id.* Another member of the team, Case Manager Samuel Croteau, states in his affidavit that, at that February 12, 2020 meeting, Plaintiff became "belligerent and argumentative and increasingly hostile about the lawsuit and the situation," and "[d]ue to this increased verbal hostility toward the officer involved in the lawsuit, . . . the inmate would need to remain on the transfer list for the safety of the officer." ECF No. 18-6 ¶ 3.

According to Plaintiff, Defendant Simmons refused to transfer him from administrative segregation housing in retaliation for filing the lawsuit against John Steele, Case No. GJH 17–2419.[4] ECF No. 1 at 3; ECF No. 1-1 at 1; ECF No. 5 at 2. Plaintiff also claims that Defendants Kretzer and Dovey improperly failed to take any action against Defendant Simmons for his misconduct. *See* ECF No. 1 at 3; ECF No. 5 at 3; ECF No. 9; ECF No. 12; ECF No. 13. Plaintiff claims that Defendant Kretzer is biased due to Plaintiff's earlier lawsuit against him, which also named Defendant Dovey as a defendant, and that Defendant Kretzer discriminates against

---

[4] On March 5, 2020, this Court granted Defendants' Motion for Summary Judgment in *Johnson v. Kreitzer*, GJH 17-2419. *See* ECF No. 18-2 at 2 n.1. Defendant Dovey and Defendant Kretzer were two of the defendants in that case. *See id.* Plaintiff filed an appeal, and a Rule 45 Notice was issued on June 9, 2020. *See id.*

4

Plaintiff by "not stepping in" on his transfer to Jessup Correctional Institution ("JCI"). *See* ECF No. 5 at 3. Defendant Kretzer, however, states that he is not Defendant Simmons's supervisor and has never participated in administrative segregation reviews or determinations assigning Plaintiff to administrative segregation. ECF No. 18-7 ¶ 6.

On March 3, 2020, the Warden's office forwarded Case Manager Croteau an informal complaint filed by Plaintiff asking to be removed from administrative segregation. ECF No. 18-6 ¶ 3. According to Case Manager Croteau, at Plaintiff's next administrative segregation team review, the team told Plaintiff that he was not being recommended for the general population due to the "increased verbal hostility" he showed at the February meeting. *Id.* Instead, he would remain in administrative segregation and on the transfer list. *Id.* ¶ 2(d). On March 15, 2020, all transfers were stopped due to the COVID-19 pandemic. *Id.* ¶ 4. Further administrative segregation team reviews were conducted regarding Plaintiff on April 8, 2020, May 6, 2020, and June 3, 2020. ECF No. 18-6 ¶ 2.

However, Plaintiff alleges that he has not been present for the administrative segregation team reviews since February 2020, and specifically that no one came to see him on May 6, 2020 for his administrative segregation review. ECF Nos. 12, 13. Case Manager Croteau's affidavit does not specify whether Plaintiff was present for the monthly meetings in April, May, and June, but he does state that at each meeting, the team determined that Plaintiff would remain in administrative segregation and on the transfer list. ECF No. 18-6 ¶ 2. Defendant Warden Richard Dovey states in his affidavit that he or his designee reviews administrative segregation housing assignments and that he reviewed and approved the determination to place Plaintiff on administrative segregation due to his concerns for his safety. ECF No. 18-9 ¶ 2.

Plaintiff complains about lack of phone access, lack of recreation, and his inability to

attend Family Day while housed in administration segregation. *See* ECF No. 1 at 3; ECF No. 5 at 2–3; ECF No. 9; ECF No. 13. He adds that he cannot exercise in a two-man cell. ECF No. 5 at 3. Defendant Kretzer states that the housing conditions in administrative segregation, including telephone access, food, showers, recreation, mail, library, and religious practice about which Plaintiff complains in this case, are the same conditions for any other inmate in his administrative segregation housing unit. ECF No. 18-7 ¶ 5.

### B. Administrative Procedure

#### 1. Informal Complaints

According to Defendants, MCTC inmate correspondence is date stamped when received, assessed to determine whether it needs review by the Warden or to be forwarded to another individual for action, and recorded in a log. ECF No 18-5 ¶ 2. If forwarded, a "buck slip" is attached. *Id.* ¶ 3. If the buck slip is marked "Handle and Respond directly to inmate," the individual to whom it was sent is responsible for determining whether a response is necessary. *Id.* ¶ 4.

As shown in the exhibits to Defendants' motion, Plaintiff did not file any inmate correspondence in 2019. *Id.* at 6. In 2020, he filed three informal complaints as correspondence, all after filing this lawsuit. *Id*. at. 7. Specifically, on March 3, 2020, Plaintiff filed the above-mentioned request to be removed from administrative segregation, which was referred to Case Manager Croteau. *Id*. On April 3, 2020, he sent correspondence stating that he had written an ARP but never received a response. *Id.* The correspondence was forwarded to Defendant Draper for review, who responded to Plaintiff on April 9, 2020. *Id*. In the third correspondence, received on May 8, 2020, Plaintiff requested a copy of paperwork showing his ownership of a television allegedly stolen from him. *Id.* The matter was referred to Officer T. McMahon for review, and a

6

response was provided on May 13, 2020. *Id.*

## 2. Administrative Remedy Procedure Complaints

According to Defendant Kretzer, when an officer gives him an inmate's ARP form for processing, Defendant Kretzer signs the copy and returns it to the officer, who then provides a receipt—a yellow copy of the complaint—to the inmate. ECF No. 18-7 ¶ 3. At the end of Defendant Kretzer's shifts, he turns in the ARP forms to the ARP Coordinator's Office. *Id.* The ARP Coordinator's Office assigns investigators to each ARP. *Id.* Defendant Kretzer states that he was never assigned an ARP investigation concerning Plaintiff. *Id.*

As the ARP Coordinator, Defendant Draper is responsible for emptying the ARP drop box each day and processing the ARPs. ECF No. 18-8 ¶ 3. If the ARP does not comply with Section 12.02.28.04 or Section 12.02.28.11 of the Code of Maryland Regulations,[5] it is procedurally dismissed and returned to the inmate for possible correction. *Id.*

Plaintiff claims ARP Coordinator Draper,[6] gives him the "run around," has not answered his ARPs, and has stopped responding to his requests regarding a missing previously-filed ARP. *See* ECF No. 1 at 3; ECF No. 5 at 3; ECF No. 9; ECF No. 12; ECF No. 13. Plaintiff further alleges that Defendant Dovey allows staff misconduct by not investigating ARPs. *See* ECF No. 1 at 3; ECF No. 5 at 3; ECF No. 9; ECF No. 12; ECF No. 13.

According to Defendants, Plaintiff filed four ARPs between December 16, 2019, and February 28, 2020, when he filed the Complaint in this case: ARP MCTC 1404-19; ARP MCTC 0062-20; ARP MCTC 0063-20; and ARP MCTC 0196-20. ECF No. 18-5 ¶ 4. ARP MCTC

---

[5] Chapter 12.02.28 of the Code of Maryland Regulations addresses the administrative remedy procedures to resolve inmate complaints. Section 12.02.28.04 is titled "Conditions of Confinement Subject to the ARP." Section 12.02.28.11 is titled "Procedural Dismissal on Preliminary Review-Resubmission."

[6] The ARP Coordinator's last name is Draper, ECF No. 18 at 1 n.1, not Diyler, as Plaintiff states in his filings, *see, e.g.*, ECF No. 5 at 3.

1404-19, filed on December 20, 2019—concerning a complaint about four gang members coming to his cell with knives, threatening him, and stealing his property—was returned to Plaintiff under Code of Maryland Regulations ("COMAR") 12.02.28.11(A)(1), which indicates either that the request form was incomplete or that more information was required. *Id.* ¶ 5; *id.* at 7. According to Defendant Draper, Plaintiff did not timely resubmit his ARP, and it was therefore dismissed under COMAR 12.02.28.11(A)(2)(c)(ii), which provides, "[i]f the resubmission is not received by the date established by the facility ARC indicated in the notice provided under §A(2) of this regulation, the procedural dismissal on preliminary review is final." *Id.* ¶ 5. ARP MCTC 0062-20 and ARP MCTC 0063-20 were both filed on January 23, 2020, and were procedurally dismissed on the same day as repetitive of ARP MCTC 1404-19 pursuant to COMAR 12.02.28.11(B). *Id. at* 8–11.[7]

ARP MCTC 0196-20 states that Plaintiff went up for administrative segregation on February 12, 2020, and "[b]efore Sgt. Simmons they wanted to let me off but since I had a lawsuit against John Steele in Unit 6 I couldn't move there." ECF No. 1-1; ECF No. 18-8 at 12. Plaintiff said his restriction to administrative segregation was an "intentional act of discrimination driven by a discriminatory intent" as well as the result of "staff negligence." ECF No. 1-1 at 1–2; ECF No. 18-8 at 12–13. This ARP was dismissed pursuant to COMAR 12.02.28.04(B)(1), which states that "[a]n inmate may not use an ARP to resolve a complaint concerning case management recommendations and decisions." ECF No. 1-1 at 1; ECF No. 18-8 at 12; *see also id.* ¶ 5.

According to record provided by Defendants, Plaintiff filed 15 additional ARPs between February 28, 2020, and July 1, 2020. ECF No. 18-8 at 4. Of those, 10 were dismissed for

---

[7] The ARPs state, "[t]his is cruel and unusual punishment to be in this cell 24/7 without any appliances"—his X-Box, TV, boom box, and other items—and that the officers had failed to investigate the robbery. *Id.* at 9, 11.

procedural reasons—for being "repetitive to [ARP MCTC] 1404-19," failure to submit additional documentation, lack of timeliness, being repetitive of the untimely filings, or "failure to follow ARC instructions." *Id.*; *see also id*. ¶ 6. Two were withdrawn at Plaintiff's request, one was dismissed,[8] and two were still pending at the time of filing. *Id.*; *see also id*. ¶ 10. According to Defendant Draper, none of Plaintiff's ARPs filed from December 16, 2019 until July 1, 2020, were assigned to Defendant Simmons or Defendant Kretzer for investigation. *Id*. ¶ 10. Defendant Draper reviewed and responded to all of Plaintiff's ARPs filed between December 16, 2019 and June 10, 2020. *Id*. Because Defendant Warden Richard Dovey does not respond to ARPs that are procedurally dismissed or where resubmission is requested, and all of Plaintiff's ARPs relevant to this case were procedurally dismissed, Defendant Dovey has not responded to them. ECF No. 18-9 ¶ 3.

Defendant states that there is no record that Plaintiff filed a grievance about his concerns regarding his administrative housing or alleged discriminatory treatment with the Inmate Grievance Office. ECF No. 18-10.

## II. MOTIONS TO AMEND

Plaintiff has submitted numerous filings to amend and supplement the Complaint. ECF Nos. 9, 12, 13, 14, 16, 21, 26, 27. Defendants opposed the filings. ECF No. 17, 28.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (recognizing that motions to amend "should be granted liberally"). The Fourth Circuit has held that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir.

---

[8] The complaint appeared to involve a package, and the explanation offered for dismissal is "package order not processed." ECF No. 18-8 at 4.

2006). "A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citations omitted).

On June 2, 2020, the Court accepted Plaintiff's Motion to Amend, ECF No. 14, as it pertained to claims about his placement on administrative segregation,[9] but cautioned him that continued filings could delay timely resolution of this case. ECF No. 15 at 1. Plaintiff was informed that he may not file additional supplements without first receiving express leave from the Court. *Id.* To obtain such leave, Plaintiff was instructed to file a one-page letter stating what new facts or issues he wanted to present and why he did not present them previously. *Id.* He was cautioned that filings that did not comply with these guidelines would be stricken. *Id.*

Plaintiff continued filing papers to add information and/or amend the Complaint. *See* ECF Nos. 16, 21, 26, 27. The additional filings allege that Defendants failed to investigate the theft of Plaintiff's property in December 2019, ECF Nos. 16, 17, 21; failed to replace the stolen property, ECF Nos. 16, 17, 21; obstructed his efforts to engage in the ARP process with respect to the stolen property due to staff members' "evil motive[s]" and "reckless disregard" for Plaintiff, ECF Nos. 16, 17, 21; failed to investigate or replace the property and obstructed Plaintiff's efforts to engage in the ARP process in retaliation for the lawsuit Plaintiff filed, ECF No. 26; and transferred him to a higher-security facility in retaliation for filing the lawsuit, ECF No. 27. He also requests that Staff Headquarter Coordinator J. Schmitt be added as a defendant because Schmitt has the power to make Defendant Draper turn over missing documentation reflecting Plaintiff's ownership of the stolen property and because she dismissed his ARP appeal.

---

[9] The Court did not order Lt. Penner, Lt. Robinette, or J. Schmitt to be added as defendants nor initiate service of process by mail on them, as the allegations against them did not directly concern Plaintiff's administrative segregation. ECF No. 15.

ECF No. 16 at 1.

To the extent Plaintiff brings a claim under § 1983 for deprivation of property without due process in violation of the Fourteenth Amendment, this claim is futile. Plaintiff alleged in an ARP that an unnamed officer negligently deprived him of the property at issue by failing to close the door to his cell, allowing other inmates to enter and steal his property. However, a negligent deprivation of property is not actionable under § 1983. *See Kerr v. S.C. Dept of Corr.*, No. CV 0:16-3321-TMC-PJG, 2016 WL 7632892, at *2 (D.S.C. Oct. 28, 2016), *report and recommendation adopted*, No. CV 0:16-3321-TMC, 2017 WL 26074 (D.S.C. Jan. 3, 2017) (citing *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986); *Menedez v. Keefe Supply Co.*, 235 Fed. App'x 737, 740 (11th Cir. 2007)); *see also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) ("Plaintiff's allegation that other inmates stole his property fails to state a claim against the prison officials because the prison's negligence in allowing the theft is not a 'taking' for purposes of the Fourteenth Amendment."). [10]

Plaintiff further complains of Defendants' failure to investigate the theft, but "the court is not aware of [] any authority that construes an investigation into criminal activity as a liberty or property interest subject to due process protection." *Kerr*, 2016 WL 7632892, at *2. Indeed, the Fourth Circuit has determined "there is no constitutional protection against prison thefts or any constitutional requirement that prison officials must conduct investigations of such thefts." *Tydings v. Dep't of Corr.*, 714 F.2d 11, 12 (4th Cir. 1983). Therefore, Plaintiff's claims related to the property allegedly stolen in December 2019 are futile, and Plaintiff is not granted leave to

---

[10] Moreover, even had Plaintiff alleged an "unauthorized intentional deprivation of property by a state employee," that allegation would fail to state a claim, as a "meaningful post-deprivation remedy for loss is available," *French v. Allegany Cty.*, No. CCB-11-2600, 2013 WL 4049682, at *4 (D. Md. Aug. 8, 2013) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))—namely, the ARP process and the right to seek damages and injunctive relief in Maryland courts, *see id.*; *Anderson v. Sec'y, Dep't of Pub. Safety & Corr. Servs.*, No. CIV.A. AMD-05-2851, 2007 WL 1799639, at *3 (D. Md. May 24, 2007), *aff'd sub nom. Anderson v. Sec'y*, 197 F. App'x 247 (4th Cir. 2006); *Manning v. Booth*, No. CIV.A. AW-04-2730, 2005 WL 1200122, at *2 (D. Md. May 20, 2005).

amend the Complaint to add them. Additionally, because Plaintiff's only allegations against J. Schmitt only involve the claims of stolen property, Plaintiff's request to add J. Schmitt as a defendant is denied.

To the extent Plaintiff alleges due process claims based on improper denials or other errors in the ARP process, those claims are also futile because "an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause." *Allen v. W. Corr. Inst.*, No. CV ELH-15-3498, 2017 WL 3607821, at *25 (D. Md. Aug. 21, 2017); *see also Jones v. Solomon*, No. 1:18-CV-89-FDW, 2018 WL 6247265, at *12 (W.D.N.C. Nov. 29, 2018) (dismissing claims where the plaintiff alleges that "various grievances were rejected, returned, mishandled, delayed, and denied by" the defendants and "there is a longstanding pattern of ignoring and neglecting due process with regards to the Administrative Remedy Procedure" because the plaintiff "has no federal constitutional right to engage in the prison grievance procedure, any alleged violation of that procedure cannot constitute a due process violation").[11]

However, Plaintiff's allegations concerning retaliation through frustration of his efforts to engage in the ARP process and through transferring him to a higher-security facility are not clearly futile. Therefore, Plaintiff's motion to amend is granted with respect to those claims, ECF

---

[11] "While the longstanding rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure," *Kitchen v. Peguese*, No. CIV A DKC-05-466, 2005 WL 4827386, at *3 (D. Md. Nov. 23, 2005), *aff'd*, 180 F. App'x 443 (4th Cir. 2006) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)), in *Kitchen*, the court found that "with the passage of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the issue is less clear," *id.* However, the court ultimately concluded, based on *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674 (4th Cir. 2005), that "an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process likely does not run afoul of the due process clause." *Kitchen*, No. CIV A DKC-05-466, 2005 WL 4827386, at *3. Courts in this District have since found that the "longstanding rule" remains in effect, and that prison officials' denial of access to the administrative remedy process is instead relevant as an affirmative defense to exhaustion. *See, e.g.*, *Allen v. W. Corr. Inst.*, No. CV ELH-15-3498, 2017 WL 3607821, at *25 (D. Md. Aug. 21, 2017); *Resper v. Schurg*, No. PJM-13-1278, 2014 WL 3345131, at *3 (D. Md. July 7, 2014).

No. 26; ECF No. 27.

## III. MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving

14

party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

Moreover, where, as here, the plaintiff is proceeding *pro se*, the Court reads the pleadings generously. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses

from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

### B.   Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff claims he has been subjected to discrimination and retaliation in violation of his First and Fourteenth Amendment rights. Liberally construed, the Complaint, as amended and supplemented, also raises claims that Plaintiff's housing placement violated his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. [12]

### 1.   Equal Protection and Discrimination

A party claiming a violation of equal protection must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 653 (4th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–40 (1985)). Bald and conclusory allegations of discriminatory intent are insufficient to state an equal protection claim. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1279 (4th Cir. 1985). Differential treatment may be alleged by identifying similarly situated individuals that were treated differently from the plaintiff. *See, e.g.*, *King v. Rubenstein*, 825 F.3d 206, 221 (4th Cir. 2016) (holding that an inmate's Equal Protection Clause claim survived dismissal when it alleged two

---

[12] Plaintiff also peppers his submissions with conclusory allegations of state law tort claims without elaboration or substantiation. *See e.g.*, ECF No. 5 at 3, 4, 9, 14. Even had Plaintiff stated a claim with respect to those state law torts, because Plaintiff's § 1983 claims are dismissed, this Court would decline to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367(c)(3). *See Cook v. James*, 100 F. App'x 178, 181 (4th Cir. 2004); *Morales v. Richardson*, 841 F. Supp. 2d 908, 913 (D. Md.), *aff'd*, 475 F. App'x 894 (4th Cir. 2012).

other inmates with medical conditions similar to the plaintiffs were not forced to undergo

surgery, while the plaintiff was). Discriminatory intent may be shown by circumstantial

evidence, such as statements revealing a defendant's attitude toward someone of a particular

race, *see Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988), or

evidence of prior discriminatory practices, *Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69,

71 (4th Cir. 1987).

Plaintiff does not allege that he was treated differently than a similarly situated inmate.

*See Williams v. Bishop*, No. CV DKC-19-1677, 2020 WL 4698064, at *11 (D. Md. Aug. 13,

2020). Indeed, according to Defendant, the housing conditions in administrative segregation

about which Plaintiff complains are the same conditions for any other inmate in his

administrative segregation housing unit. ECF No. 18-7 ¶ 5. Accordingly, his allegations fail to

support an equal protection claim.

### 2. Eighth Amendment

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue

of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; *Gregg v.

Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v.

Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). To fulfill their Eighth Amendment obligations,

officials must ensure "humane conditions of confinement" and implement "reasonable measures

to guarantee the safety of the inmates." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016)

(quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities"

may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).

However, conditions which are merely restrictive or even harsh, "are part of the penalty that

criminal offenders pay for their offenses against society." *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (internal quotation marks and citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

"Administrative segregation alone does not constitute an Eighth Amendment violation." *Williams v. Bishop*, No. CV DKC-19-1677, 2020 WL 4698064, at *11 (D. Md. Aug. 13, 2020) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)). Here, as in *Williams*, Plaintiff "does not allege he suffered any injury or decline in health as a result of the conditions in administrative segregation." *Id.* Moreover, although confinement in segregation may constitute an Eighth Amendment violation where it is long-term and indefinite, *Skinner v. Moyer*, No. CV TDC-17-3262, 2020 WL 1065740, at *9 (D. Md. Mar. 4, 2020) (the plaintiff had been held there indefinitely for "well over two years"), Plaintiff's stay in administrative confinement was finite, lasting about eight months. *See* ECF No. 1; ECF No. 18-4 ¶ 3; ECF No. 18-5 at 3–5; ECF No. 25. Therefore, he has failed to state a claim alleging violations of the Eighth Amendment.

### 3. Due Process

#### a. Administrative Segregation

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."

*Meachum v. Fano*, 427 U.S. 215, 224 (1976). Absent a showing of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," prisoners do not have a constitutional right to due process before being denied access to programs or particular housing. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Determining whether confinement conditions meeting the standard outlined in *Sandin* is a "necessarily . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502–03 (4th Cir. 1997).

"Assignment to administrative segregation ordinarily does not create an atypical and significant hardship." *Williams v. Bishop*, No. CV DKC-19-1677, 2020 WL 4698064, at *8 (D. Md. Aug. 13, 2020); *see also Sandin,* 515 U.S. at 485 (no liberty interest protecting against a thirty-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence"); *Beverati*, 120 F.3d at 504 (finding six-month period in administrative segregation was not so atypical that it implicated a liberty interest). However, the Fourth Circuit has considered three factors in determining whether administrative segregation did, in fact, amount to an atypical and significant hardship, thus creating a liberty interest: "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015), *as amended* (July 7, 2015) (finding liberty interest where the appellant's "20-year stint in highly restrictive solitary confinement" was "extraordinary in its duration and indefiniteness"); *see also Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) (finding liberty interest where inmate was administratively segregated indefinitely in highly restrictive solitary confinement conditions for nearly 39 years). "It is not atypical for inmates to be placed on administrative segregation pending an investigation or for

monitoring in light of safety concerns." *Williams*, 2020 WL 4698064, at *8.

Inmates are not entitled to be housed in any particular security classification or cell. *See McKune v. Lil*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002) ("In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns facing [the] inmates[.]"); *Slezack v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (finding, that within certain limits, the security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints"). Additionally, no constitutional guarantee is abridged by placement in a double cell. *See, e.g.*, *Keeling v. Barrager*, 666 F. App'x 153, 156 (3d Cir. 2016) ("[I]t is well settled that he had no protected liberty interest that was implicated by . . . the removal of his single-cell assignment[.]").

Plaintiff does not dispute that he was moved to administrative segregation at his request and due to his concerns of danger posed by other inmates. Additionally, as stated above, he stayed there for a finite time period—about eight months. Thus, Plaintiff does not sufficiently allege in the Complaint that the conditions he experienced during his confinement in administrative segregation constituted an atypical and significant hardship that, in turn, triggered due process protections. Moreover, he received regular security classification reviews and was eventually transferred to another prison. Although he claims that he was not present for several of those meetings, his claims regarding any procedural defects in the process of assigning him to administrative segregation and subsequent reviews of that status do not amount to constitutional violations. *See Williams*, 2020 WL 4698064, at *9 ("Viewing Plaintiff's allegations in the light

20

most favorable to him . . . occasional absences [from monthly review meetings] as he seems to allege here are insufficient to amount to a constitutional violation."); *see also id.* ("To the extent that he alleges that his absence from segregation review meetings abridge DOC directives, a violation of prison policy alone does not state a Fourteenth Amendment due process violation."). Accordingly, Plaintiff fails to allege that his assignment to administrative segregation violated his due process rights.

### b.  Loss of Property

To the extent Plaintiff raises claims concerning his stolen property and Defendants' failure to investigate the theft, compensate Plaintiff for the lost value of his belongings, or properly engage in the ARP process regarding the stolen property, those claims fail for the reasons stated above in the discussion of Plaintiff's Motions to Amend. *See supra*, Section II. The proposed amended claims were futile and the claims already present in the Complaint do not allege violations under § 1983.

### c.  Administrative Remedies

Similarly, to the extent Plaintiff complains of Defendants' various errors and negligence with respect to the ARP process, those claims fail for the same reasons stated above in the discussion of Plaintiff's Motions to Amend. *See supra*, Section II. The proposed amended claims were futile and the claims already present in the Complaint do not allege violations under § 1983.

### 4.  Retaliation

Plaintiff's retaliation allegations are fairly construed as a claim that he suffered retaliation for exercising his First Amendment right to petition for the redress of grievances. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the

right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). A constitutional claim of retaliation has three elements: (1) the plaintiff engaged in protected conduct; (2) "the defendants took some action that adversely affected [the plaintiff's] First Amendment rights"; and (3) a causal connection exists between the first two elements, such that the protected conduct motivated at least in part the adverse action. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

"[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). However, "a prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The First Amendment thus protects an inmate's "right to file a prison grievance free from retaliation," *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017), and an inmate's right to access the courts, *Goodman v. Smith*, 58 F. App'x 36, 37 (4th Cir. 2003); *Patel v. Moron*, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012).

Based on the facts alleged in the Complaint, Plaintiff has stated a plausible First Amendment retaliation claim against Defendants. Plaintiff alleges that he was retaliated against for filing a Complaint against an MCTC officer. Thus, Plaintiff has sufficiently alleged that he engaged in protected First Amendment activity, satisfying the first element of Plaintiff's retaliation claim. *See Clark v. Beeman*, No. CV TDC-18-0090, 2019 WL 4228400, at *11 (D. Md. Sept. 4, 2019).

Regarding the second element, a plaintiff can establish retaliatory conduct if the

defendant took an action that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotation marks and citations omitted); *see also Goodman*, 58 F. App'x at 38 ("The plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience."). "Certainly, placing an inmate in administrative segregation could deter a person of ordinary firmness from exercising his First Amendment rights." *Martin*, 858 F.3d at 250 (internal quotation marks and citations omitted).

Here, Plaintiff does not dispute that he initially sought administrative segregation housing due to his fears for his safety. However, by February 19, 2020, at the latest, it appears that Plaintiff no longer wished to be in administrative segregation, as evidenced by the ARP filed on that date. *See* ECF No. 18-8 at 12–13. He nevertheless remained in administrative segregation until he was transferred, about six months after that ARP was filed. *See* ECF Nos. 18-6, 25. Plaintiff further claims in his amended pleadings that Defendants also failed to investigate or compensate him for the theft of his property and transferred him to a higher security facility in retaliation for filing the lawsuit. ECF Nos. 26, 27. Plaintiff thus sufficiently alleged that Defendants took adverse action against him, satisfying the second element of his retaliation claim.

Finally, Plaintiff must demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliatory act was temporally proximate to that activity. *See id.* According to Plaintiff, Defendants decided to keep him on administrative segregation against his

wishes during the February 12, 2020 monthly administrative team review meeting in retaliation for his filing of a lawsuit against an MCTC officer, John Steele. *See* ECF No. 18-8 at 12–13.

Defendants do not dispute that in February 2020, when Plaintiff was being considered for general population housing at MCTC, he was asked about his litigation by the Administrative Segregation Team. ECF No. 18-4 ¶ 5. Thereafter, Plaintiff was continued on administrative segregation and placed on a transfer list to any medium security prison. *See id.* However, Defendant Simmons states that asking Plaintiff about lawsuits against corrections staff was "normal." ECF No. 18-4 ¶ 5 ("When an inmate places a civil suit on an officer, it is normal to talk to the officer and inmate to ensure, and place in writing, that neither party fears for their safety."). Defendants further allege that Plaintiff was kept on administrative segregation due to his conduct at the February 2020 meeting. *Id.* ¶ 6; ECF No. 18-6 ¶ 3.

This explanation fails to sufficiently refute Plaintiff's allegations such that a finding of summary judgment is warranted. Specifically, Defendants provide only bare facts concerning the questioning of Plaintiff about his civil litigation. *See* ECF No. 18-4 ¶ 5 (stating that "someone (not sure who) mentioned Plaintiff's lawsuits against officers at MCTC"). Plaintiff states that there was a camera in the room at the time of the February 2020 administrative segregation review meeting and that the footage will provide additional information relevant to his claims. *See* ECF No. 23. However, Defendant did not provide that footage, to the extent that it exists, or consult it to determine who asked Plaintiff about his lawsuit, what was said, and how Plaintiff responded. Taking the facts in the light most favorable to Plaintiff, a genuine dispute of material fact remains concerning whether Plaintiff's exercise of his First Amendment rights, specifically filing a lawsuit against an MCTC officer, motivated his continued placement on administrative segregation, precluding summary judgment in Defendants' favor.

However, because the Court does not find that Plaintiff has sufficiently alleged that Defendant Kretzer was involved in the decision to keep Plaintiff in administrative segregation or transfer him to RCI, and Defendant Kretzer has submitted a declaration in which he states that he has never been assigned to an ARP investigation concerning Plaintiff, is not Defendant Simmons's supervisor, and has never participated in administrative segregation reviews or determinations assigning Plaintiff to administrative segregation,  ECF No. 18-7 ¶¶ 3–5, Defendant Kretzer will be dismissed from the action. *See Pevia v. Hogan*, 443 F. Supp. 3d 612, 630 (D. Md. 2020) ("[T]he doctrine of respondeat superior does not apply to § 1983 cases. . . . Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.") (internal citations omitted); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

### 5.  Exhaustion of Administrative Remedies

#### a.  Exhaustion Under the Prisoner Litigation Reform Act

Regardless of the merits of the case, Defendants assert that the suit must be dismissed due to non-exhaustion pursuant to the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e. ECF No. 18-2 at 25–30. The Prisoner Litigation Reform Act provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Additionally, an inmate must complete the prison's internal appeals process before bringing suit. *See Jones*, 549 U.S. at 202 (noting the PLRA requires prisoners to exhaust prison grievance procedures before filing suit); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) ("Because Girard filed his initial complaint in this action before the CORC had either decided his appeal or the thirty-day period to respond had elapsed, he failed to exhaust his remedies as to this grievance."); *Mitchell v. Bishop*, No. CV PX-18-933, 2019 WL 4059902, at *4 (D. Md. Aug. 28, 2019) ("Nor can [the plaintiff] save the claims by exhausting administrative remedies while this case is pending."); *cf. Chase*, 286 F. Supp. 2d at 530 ("The critical question is not whether the Maryland prisoner grievance process currently is available to Chase, but rather whether those remedies were available to him on July 22, 1998, at the time when he filed this suit in federal court.").

A claim that has not been exhausted may not be considered in court—"exhaustion is mandatory." *Jones*, 549 U.S. at 211, 220; *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)

("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion[.]" (quoting *Miller v. French*, 530 U.S. 327, 337 (2000))). However, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 136 S. Ct. at 1856; *see* 42 U.S.C. § 1997e(a).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S.Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). However, the *Ross* Court also identified three kinds of circumstances in which an administrative remedy is unavailable, and an inmate's duty to exhaust available remedies "does not come into play." *Id.* First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

### b. Exhaustion in Maryland Prisons

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01(B)(1) (defining ARP). The grievance procedure applies to the submission of grievances against Division of Correction officials or employees. C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(8). An inmate must exhaust the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02(D).

To exhaust the ARP process, a prisoner must first file an ARP with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* COMAR 12.02.28.09(B). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* COMAR 12.02.28.14.B(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* C.S. §§ 10-206, 10-210; COMAR 12.02.28.05(E), 12.02.28.18, 12.07.01.04, 12.07.01.05(B). Inmates may then seek judicial review of the IGO's final determinations in a Maryland Circuit Court. C.S. § 10-210. However, "an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement." *Aurel v. Mailroom N. Branch*, No. CV ELH-14-2813, 2016 WL 3957647, at *8 (D. Md. July 21, 2016) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

Although the ARP process applies to many kinds of inmate complaints "arising from the circumstances of custody or confinement," COMAR 12.07.01.01(B)(8), it does not apply case management decisions, which are to be directly grieved to the IGO, *see* COMAR 12.02.28.04(B)(1), 12.02.28.11(B)(1)(b), 12.07.01.04.

    **c.   Plaintiff's Attempts to Exhaust**

Plaintiff filed an ARP regarding Defendants' alleged retaliatory decision to keep him in administrative segregation. ECF No. 1-1. However, when it was rejected, because the ARP process does not apply to case management decisions, *see id.* at 1, the record does not show that Plaintiff filed a complaint directly to the IGO as required. *See* ECF No. 18-10.

It appears Plaintiff referenced these same claims in response to a letter from the IGO regarding Plaintiff's appeal of ARPs involving his stolen property allegations. ECF No. 24 at 5. However, Plaintiff's response is date stamped July 21, 2020, and it is not clear whether or how the IGO handled it. Therefore, it fails to show Plaintiff exhausted his remedies prior to filing suit. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 202 (2007). Moreover, it is not clear that this brief mention, made in the context of his requests for compensation for lost property, would exhaust Plaintiff's retaliation claims regarding his placement in administrative segregation or transfer to RCI even had it been timely.

Finally, Plaintiff makes numerous assertions in his filings that Defendants have frustrated his attempts to engage in the ARP process, ECF Nos. 22, 23, 24, and these assertions might form the basis of an argument that exhaustion was unavailable; however, the alleged difficulties relate only to Plaintiff's attempts to file ARPs regarding his lost property. They do not establish that Plaintiff was unable to file a complaint with the IGO regarding the alleged retaliatory decision to keep him in administrative segregation.

Therefore, while a genuine dispute about an issue of material fact remains as to Plaintiff's retaliation claim, it cannot proceed due to Plaintiff's failure to exhaust administrative remedies.[13] Rather, the Complaint will be dismissed without prejudice, and, to the extent Plaintiff exhausts his remedies, he is free to refile his claims.

---

[13] Because this action is dismissed for failure to exhaust administrative remedies, the Court does not address Defendants' other arguments.

## V.  CONCLUSION

For these reasons, the Court will grant Defendants' Motion. A separate Order follows.


Dated: <u>March 22, 2021</u>                                    <u>        /s/                           </u>
                                                                              GEORGE J. HAZEL
                                                                              United States District Judge